

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CITY OF AUSTIN, ACTING BY AND THROUGH ITS ELECTRIC UTILITY DEPARTMENT, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| CONVERGENT GROUP CORP. | § § | CIVIL ACTION NO. A-01-CA-202 JN |
| Defendant and Third-Party Plaintiff, | § § | |
| v. | § § | |
| GINO DeMARCO | § § | |
| Third-Party Defendant. | § | |

### CONVERGENT'S FIRST AMENDED THIRD-PARTY COMPLAINT, CROSS-CLAIM, AND COUNTERCLAIM

TO THE HONORABLE CHIEF UNITED STATES DISTRICT JUDGE:

Defendant Convergent Group Corporation files this First Amended Third-Party Complaint and Cross-Claim against Gino DeMarco and this Counterclaim against the City of Austin, acting by and through its Electric Utility Department.

CONVERGENT'S FIRST AMENDED THIRD-PARTY COMPLAINT, CROSS-CLAIM, AND COUNTERCLAIM   PAGE 1

90

## Parties

1. Plaintiff, City of Austin, acting by and through its Electric Utility Department ("Austin Energy"), is a municipal corporation organized and existing under the laws of the State of Texas. It is a citizen of the State of Texas, and has been throughout the period of time since the above-captioned suit was filed.

2. Defendant and Third-Party Plaintiff, Convergent Group Corporation ("Convergent"), is a Delaware corporation with its principal place of business located in the State of Colorado. Convergent is, and has been throughout the period of time since the above-captioned suit was filed, a citizen of the States of Delaware and Colorado.

3. Third-Party Defendant, Gino DeMarco ("DeMarco"), is an individual, who, upon information and belief, is a citizen of the State of Oklahoma who is working and conducting business in the State of Texas. DeMarco has appeared and answered in this litigation. DeMarco has conducted business affairs on a full-time basis from his office in Austin, Texas since 1999. The claims asserted herein arise from and are directly related to DeMarco's activities in the State of Texas. DeMarco has also purposefully availed himself of the benefits and protections of the State of Texas by establishing minimum contacts with this state.

## Jurisdiction and Venue

4. Jurisdiction is proper for this Third-Party Complaint pursuant to 28 U.S.C. §1332. The third-party plaintiff and third-party defendant are citizens of different states and the matter in controversy with regard to the Third-Party Complaint exceeds the sum or value of $75,000, exclusive of interest, costs, and attorneys' fees and is between citizens of different

Case 1:01-cv-00202-JRN   Document 90   Filed 02/19/02   Page 3 of 16

states. In the alternative, jurisdiction is proper pursuant to 28 U.S.C. §1367. The claims asserted in this Third-Party Complaint are so related to the claims in the above-captioned matter that they form part of the same case or controversy under Article III of the United States Constitution.

5. Jurisdiction is proper for this Counterclaim pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1367. The damages suffered by Convergent that are the subject of this Counterclaim exceed the sum or value of $75,000, exclusive of interest, costs, and attorneys' fees. Also, the claims asserted in this Counterclaim are so related to the claims in the above-captioned matter that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper for both the Third-Party Complaint and the Counterclaim in the Western District of Texas pursuant to 28 U.S.C. §1391(a).

## Overview

7. Austin Energy hired Convergent to perform an extremely complex, two-year software and services project called the DataOne project. DeMarco is an outside consultant hired by Austin Energy to serve as the DataOne project director. Instead of allowing Convergent to perform its project tasks in an efficient, common-sense manner, Austin Energy and DeMarco forced Convergent to traverse a mountain of red tape and bureaucratic procedure that were not necessary or appropriate for the project nor required under the applicable terms of the Agreements between the parties. Then, after DeMarco's management of the project distracted Convergent from its important work and resulted in some predictable interim delays, Austin Energy and DeMarco began a calculated and aggressive campaign to blame Convergent for

CONVERGENT'S FIRST AMENDED THIRD-PARTY COMPLAINT, CROSS-CLAIM, AND COUNTERCLAIM         PAGE 3

everything. The slightest obstacle or setback drew a detailed, critical letter from DeMarco demanding explanations, "process" documentation, and "corrective action plans." Convergent was forced to respond to its unreasonably demanding client and made sincere attempts both to address the mounting demands and to perform the real project work. Convergent took DeMarco's and Austin Energy's demands seriously and worked hard to address them, despite the fact that these excessive demands were detracting from Convergent's work on the key project tasks. In spite of all these circumstances, DeMarco induced Austin Energy to terminate the Agreements almost a year before the project due date, and, curiously, less than a month after Convergent received a clean project audit from the City of Austin's auditor. Now, after terminating Convergent and claiming in this litigation that Convergent's work was worthless, Austin Energy is proceeding with the project using, to a large extent, the road-map Convergent created. Convergent now sues DeMarco for tortious interference with its contracts with Austin Energy and for misappropriation, and Convergent sues Austin Energy for breach of contract and for misappropriation.

### Background Facts

8.  In 1998-99, Austin Energy decided to replace its Power Delivery group's existing computer software applications for geographic information management, outage management, work management and distribution planning and analysis with a new system called "DataOne." On or about November 3, 1999 Austin Energy signed three contracts with Convergent–the "Base Agreement," which provided for the sale of professional consultant services required to provide technical and management consulting expertise and services from

Convergent to Austin Energy; the "Master License," which granted a license to Austin Energy in certain computer software module(s); and the "Maintenance Agreement," which provided maintenance and support by Convergent of certain software. These three agreements are sometimes collectively referred to herein as the "Agreements."

9. Prior to signing these Agreements, Austin Energy licensed four software packages from outside vendors. It hired Convergent to integrate these packages; to develop custom applications and interfaces for Austin Energy; to assess Austin Energy's current technology and its future needs; to design and implement interfaces and systems to meet Austin Energy's needs; and to educate Austin Energy's employees regarding various technology-related matters. The Base Agreement called for Convergent to produce certain "deliverables." The deliverables included such things as strategy documents, plans, designs, meetings, and software code. The ultimate goal was the design and delivery of a DataOne system that met the needs of Austin Energy.

10. As is typical in projects of this complexity, some problems and obstacles were encountered as the project progressed, many of which were caused by DeMarco's and Austin Energy's management of the project. Nevertheless, the project was proceeding, and ultimately Convergent would have delivered the DataOne system by the contractual due date. DeMarco's and Austin Energy's management of the project, however, made real progress extremely difficult. For example, DeMarco attempted to apply manufacturing management techniques to a software and services project, which is a very different undertaking. Minor issues and setbacks were unnecessarily raised to "crisis" level, requiring a wasteful and time consuming effort to identify

"process" issues that might have led to the minor problems and then drafting "corrective action plans" and "lessons learned" documents, which would then be reviewed and commented upon several times. The inordinate amount of time that DeMarco and Austin Energy required Convergent to spend documenting <u>what</u> it was going to do, <u>how</u> it was going to do it, and <u>why</u> everything was not perfect from the beginning took away precious time and resources from the job of actually performing the work necessary to complete DataOne.

11.     DeMarco created an overwhelmingly difficult work environment for the DataOne project, which delayed and hindered Convergent's performance under the agreements. In addition to delaying and hindering Convergent's performance under the Agreements, DeMarco's actions also delayed Austin Energy's own performance of its tasks and obligations. DeMarco also actively reported to Austin Energy management that Convergent was performing poorly under the Agreements. DeMarco attempted to, and ultimately did, influence and induce Austin Energy to wrongfully terminate the Agreements.

12.     Upon information and belief, DeMarco and perhaps other Austin Energy personnel purposefully pursued a course of raising minor issues with Convergent to a "crisis" level and ultimately inducing Convergent's termination, so as to shift the focus away from their own mismanagement of the project. Austin Energy and DeMarco belatedly decided mid-project to build the Enterprise Application Infrastructure (EAI) to provide the "foundation" for the DataOne system. Because much of the rest of the project could not proceed without the "foundation" sufficiently in place, the Project was destined to be delayed due to no fault of Convergent. DeMarco and other Austin Energy personnel, therefore, induced the breach so as to

shift the blame for the delay onto Convergent. Austin Energy had suffered significant negative publicity for its mismanagement of a prior project and could not afford for the public to learn of their mismanagement of the DataOne project as well.

13.   After overburdening Convergent with red tape and distracting it with calls for more and more "process" and documentation, Austin Energy then began complaining that the project was not moving faster. On or about January 5, 2001, almost a year before the due date for DataOne, Austin Energy terminated the Agreements, citing alleged breaches by Convergent. Interestingly, this termination occurred less than a month after Convergent received a clean project audit from the City of Austin's auditor. Furthermore, after terminating Convergent for allegedly poor work, DeMarco has since been in contact with certain former Convergent employees who worked on the DataOne project. DeMarco also attempted to solicit at least one Convergent employee, Anton Prinsloo, in violation and breach of the non-solicitation provision of the Base Agreement.

14.   Austin Energy's termination was extremely premature and wrongful. It has deprived Convergent of the additional revenue it was due on the DataOne Project and has damaged its standing in the marketplace. Austin Energy has repudiated further responsibility for payment to Convergent or other obligations under the Agreements. At the time Austin Energy terminated the Agreements, it had paid Convergent only approximately $2.9 million of the full contract price, which exceeded $6.5 million at the time of termination.

15.   After terminating the Agreements, refusing to pay Convergent in full the amounts owed under the Agreements, and filing suit alleging that Convergent's work on the

DataOne project was of no value whatsoever, Austin Energy and DeMarco then proceeded to take and use Convergent's designs, concepts, ideas, software, and proprietary work product in the ongoing DataOne project. Under the circumstances, and particularly in light of Austin Energy's claims in this litigation, such use of Convergent's intellectual property is a misappropriation of Convergent's confidential commercial information and its trade secrets. Upon information and belief, Austin Energy has also given third parties and its own employees who continue to work on the DataOne project access to Convergent's confidential commercial information and its trade secrets.

16.     The DataOne project designs, concepts, ideas, software, and proprietary work product were developed through extensive testing and at considerable capital expense to Convergent. This information and documentation is substantially secret and not generally known outside of Convergent's business. Convergent has taken measures to guard and protect the confidentiality and secrecy of this information and to prevent it from being acquired and duplicated by others. In particular, Convergent has entered into non-disclosure and confidentiality agreements with Austin Energy and its other clients and has restricted access to its trade secrets to personnel with a need to know. Moreover, Convergent has at all times retained ownership rights, title, and interest in the DataOne project software and all derivative works.

17.     Austin Energy filed a complaint against Convergent on or about March 9, 2001, which is attached hereto as Exhibit A. Austin Energy sued Convergent for breach of contract, fraud and negligent misrepresentation, alleging that "Convergent's inability to timely perform its contractual obligations" was a breach of contract. However, as set forth above, DeMarco

hindered and delayed Convergent's work under the Agreements and then lobbied and influenced Austin Energy to terminate the Agreements wrongfully.

## CAUSES OF ACTION

### Tortious Interference with an Existing Contract Against DeMarco

18. Convergent incorporates by reference paragraphs 1 - 17, above.

19. DeMarco is liable to Convergent for all or part of Austin Energy's claim against Convergent due to his tortious interference with the contractual agreements between Convergent and Austin Energy. DeMarco is also liable to Convergent for the loss of benefits to Convergent of the Agreements.

20. DeMarco had actual knowledge of the contractual agreements between Convergent and Austin Energy by virtue of his position as project director for the DataOne project.

21. DeMarco willfully and intentionally interfered with said contractual agreements and induced any alleged breach by Convergent. DeMarco's actions made Convergent's performance of the Agreements more burdensome, difficult, or impossible. DeMarco also willfully and intentionally induced Austin Energy to breach the Agreements by wrongfully influencing Austin Energy and by attempting to solicit at least one Convergent employee.

22. The aforementioned wrongful interference by DeMarco is the proximate cause of any alleged actual damages complained of by Austin Energy in its complaint and is the proximate cause of damages to Convergent.

23. DeMarco acted in bad faith and with malice, entitling Convergent to exemplary

or punitive damages against DeMarco.

24.   At the time Austin Energy terminated the Agreements, it had paid Convergent only approximately $2.9 million of the full contract price, which exceeded $6.5 million at the time of termination. DeMarco's tortious interference caused actual damages to Convergent in an amount exceeding the minimum jurisdictional limits of this Court.

### Misappropriation Against DeMarco

25.   Convergent incorporates by reference paragraphs 1-24, above.

26.   The DataOne Project designs, concepts, ideas, software, and proprietary work product are used in Convergent's business and provide Convergent an opportunity to obtain an advantage over competitors who do not know or use it. This information and documentation is substantially unknown in the trade and is extremely valuable to Convergent. As such, the designs, concepts, ideas, software, and proprietary work product constitute trade secrets. Likewise, these designs, concepts, ideas, software, and proprietary work product constitute the confidential commercial information of Convergent.

27.   Convergent has taken reasonable steps to protect its trade secrets and confidential commercial information, yet despite Convergent's efforts, DeMarco has proceeded to take and use Convergent's trade secrets and confidential commercial information.

28.   As a direct and proximate result of DeMarco's conduct, Convergent has suffered loss of its substantial capital investment, and the loss of potential profits that would accrue to Convergent but for DeMarco's misappropriation of Convergent's trade secrets and confidential commercial information. In addition, Convergent has suffered a loss of its competitive

advantage to the extent DeMarco is using Convergent's trade secrets and confidential commercial information in working with another company on the ongoing DataOne project. For the harm and loss that Convergent has suffered, Convergent now sues to recover its direct, actual damages as well as pre- and post-judgment interest as allowed by law.

29.     For the harm and loss that will continue but for the intervention of this court, Convergent has no adequate remedy at law. If DeMarco is permitted to continue using Convergent's trade secrets and confidential commercial information, Convergent's trade secrets and confidential commercial information may be further disseminated by DeMarco, resulting in damages to Convergent that are unpredictable, unending and irreparable. Therefore, Convergent now asks that a permanent injunction be issued enjoining DeMarco from directly or indirectly using or disclosing Convergent's trade secrets and confidential commercial information in the future.

## Breach of Contract Against Austin Energy

30.     Convergent incorporates by reference paragraphs 1-29, above.

31.     Austin Energy's actions constitute material breaches of the Agreements. Convergent has suffered direct, actual damage as a result of said breaches in an amount exceeding the minimum jurisdictional limits of this Court. All conditions precedent to the institution of this Counterclaim have been performed, have occurred, or have been waived.

32.     Austin Energy's actions have breached the following provisions of the Base Agreement: ¶2 ("Both parties will cooperate with each other and provide timely information and timely status to the other Party regarding their development efforts in order to facilitate the

success of the project by not intentionally delaying the other Party."); ¶4 (Payment Terms); ¶6 (Non-solicitation of Employees); and ¶8 ("Austin Energy shall have no right to control or direct the details, manner, or means by which Consultant performs the services hereunder, provided the Work conforms to the requirements of this Agreement."). In addition, Austin Energy has breached the following provision of the Licensing Agreement: ¶ 5.2(E) (Requiring Austin Energy to "return or destroy all copies of the Licensed Software and supporting Documentation in its possession" and to "deliver a notarized certification . . . stating that it no longer has any rights to use . . ."). Upon information and belief, Austin Energy has breached other provisions of the Agreements as well.

33.     Convergent sues to recover its direct, actual damages as well as its reasonable and necessary attorneys' fees, pre- and post-judgment interest as allowed by law, and costs.

### Misappropriation Against Austin Energy

34.     Convergent incorporates by reference paragraphs 1-33, above.

35.     The DataOne Project designs, concepts, ideas, software, and proprietary work product are used in Convergent's business and provide Convergent an opportunity to obtain an advantage over competitors who do not know or use it. This information and documentation is substantially unknown in the trade and is extremely valuable to Convergent. As such, the designs, concepts, ideas, software, and proprietary work product constitute trade secrets. Likewise, these designs, concepts, ideas, software, and proprietary work product constitute the confidential commercial information of Convergent.

36.     Convergent has taken reasonable steps to protect its trade secrets and

confidential commercial information, yet despite Convergent's efforts, Austin Energy has proceeded to take and use Convergent's trade secrets and confidential commercial information in the ongoing DataOne project.

37. Alternatively, to the extent Austin Energy claims that it has a license to use Convergent's trade secrets and confidential commercial information, any continuing use thereof is a breach of said license.

38. As a direct and proximate result of Austin Energy's conduct, Convergent has suffered loss of its substantial capital investment, and the loss of potential profits that would accrue to Convergent but for Austin Energy's breach of contract and misappropriation of Convergent's trade secrets and confidential commercial information. In addition, Convergent has suffered a loss of its competitive advantage to the extent Austin Energy is using Convergent's trade secrets and confidential commercial information in working with another company on the ongoing DataOne project. For the harm and loss that Convergent has suffered, Convergent now sues to recover its direct, actual damages as well as pre- and post-judgment interest as allowed by law.

39. For the harm and loss that will continue but for the intervention of this court, Convergent has no adequate remedy at law. If Austin Energy is permitted to continue using Convergent's trade secrets and confidential commercial information, Convergent's trade secrets and confidential commercial information may be further disseminated by Austin Energy, resulting in damages to Convergent that are unpredictable, unending and irreparable. Therefore, Convergent now asks that a permanent injunction be issued enjoining Austin Energy and their

agents, servants, and employees from directly or indirectly using or disclosing Convergent's trade secrets and confidential commercial information in the future.

### Jury Demand

40.    Convergent demands trial by jury and is prepared to tender any required jury fee. Austin Energy has previously demanded a jury trial for its claims and has paid the required jury fee in State Court prior to removal to this Court.

### Prayer for Relief

41.    Third-Party Plaintiff Convergent Group Corporation prays that the Court enter judgment in favor of Convergent; that Convergent recover from DeMarco any damages awarded against Convergent and in favor of the City of Austin, acting by and through its Electric Utility Department; that Convergent recover its actual damages, punitive damages, costs, pre- and post-judgment interest, and reasonable attorneys' fees from DeMarco; that Convergent be granted a permanent injunction against DeMarco; and that Convergent be granted such other and further relief to which it may be entitled.

42.    Defendant Convergent Group Corporation prays that Plaintiff City of Austin, acting by and through its Electric Utility Department take nothing by way of its lawsuit; that Austin Energy's claims be dismissed with prejudice; that Convergent recover its costs and fees expended in defending this action and prosecuting its Counterclaim; that Convergent recover its direct, actual damages under its Counterclaim as well as costs, attorneys' fees, and pre- and post-judgment interest as allowed by law; that Convergent be granted a permanent injunction pursuant to its Counterclaim; and that Convergent be granted such other and further relief to which it may be entitled.

Respectfully submitted,

McKOOL SMITH, P.C.

_____
Jeffrey Bragalone
State Bar No. 02855775
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:  (214) 978-4000
Telecopy:   (214) 978-4044

Scott L. Cole
State Bar No. 00790481
1501 South Mopac Expressway, Suite A200
Austin, Texas  78746
Telephone:  (512) 314-8400
Telecopy:   (512) 314-8425

ATTORNEYS FOR CONVERGENT

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was faxed and mailed, certified return receipt requested, on the 15th day of February, 2002 to counsel for Plaintiff and Third-Party Defendant:

> Casey Dobson
> Scott, Douglass & McConnico, L.L.P.
> 600 Congress Avenue
> Suite 1500
> Austin, Texas 78701
>
> John Zavitsanos, Esq.
> AHMAD, ZAVITSANOS & ANAIPAKOS, P.C.
> 3460 One Houston Center
> 1221 McKinney Street
> Houston, Texas 77010

_____
Scott L. Cole